IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| COEM TEXAS, LLC | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. _____ |
| | § | |
| ONEX CONSTRUCTION, INC.; | § | |
| FIDELITY AND DEPOSIT COMPANY | § | *Jury Trial Requested* |
| OF MARYLAND, *Surety*, | § | |
| | § | |
| *Defendant*. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, COEM TEXAS, LLC ("COEM") files this Original Complaint seeking damages against ONEX CONSTRUCTION, INC. ("ONEX") and FIDELITY AND DEPOSIT COMPANY OF MARYLAND ("FIDELITY"), as Surety for ONEX.

**THE PARTIES**

1. Plaintiff COEM TEXAS, LLC is a Texas Limited Liability Company, with a principal places of business in Houston and Bay City, Texas.

2. ONEX CONSTRUCTION, INC., is an Ohio corporation, and is believed to be a citizen of Ohio, that is registered to do business in the State of Texas (Texas Sec'y State File No. 0802426811), with an principal office for operations in Bay City,

Matagorda County, Texas, and may be served through its registered agent for service:

> Registered Agent Solutions, Inc.
> 1701 Directors Blvd., Suite 300
> Austin, Texas 78744

Defendant is represented by counsel and a courtesy copy of this Complaint shall be served to him via email, with request for acceptance of service of process:

> James Slater
> Baker & Hostetler LLP
> Key Tower, 127 Public Square, Suite 2000
> Cleveland, Ohio 44114-1214
> jslater@bakerlaw.com

3. FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a subsidiary of Zurich American Insurance Company, does not do business directly in Texas and is believed to be a citizen of Maryland, and can be served through its Registered Agent:

> CSC-Lawyers Incorporating Service Company
> 7 St. Paul St., Suite 820
> Baltimore, Maryland 21202

FIDELITY provided two surety bonds to release two materialman's liens that COEM filed against Tenaris Bay City, the construction project owner for which COEM provided work, and FIDELITY is being sued in such capacity. A courtesy copy of this Complaint shall be sent to:

> Zurich American Insurance Co.
> Attn: Surety Claims
> 1299 Zurich Way
> Schaumburg, Illinois 60196-1056

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332, since all or substantial part of the complained actions and transactions occurred in Texas, the Parties have citizenship of different states, and the amount in controversy exceeds the Court's minimum jurisdiction.

5. Venue is generally proper in the Southern District of Texas, Galveston Division, as substantial part of the events or omissions giving rise to this claim occurred, in whole or in substantial part, specifically Bay City, Matagorda County, Texas, which is within this District and Division, and because COEM and ONEX's actions and transactions which form the basis of this lawsuit occurred in this District and Division. In addition, for purposes of the Tenaris Bay City project, both COEM and ONEX maintained a principal place of business for such operations, and in any event this District. Accordingly, venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

## FACTUAL BACKGROUND

6. This is a contractor-subcontractor dispute which arises from work that ONEX and COEM were believed to have agreed to perform for a set price. By way of background, COEM responded to the ONEX Request for Quote (RFQ) issued in January 2016, with specifically Off. No. 16/0015 for the base bid for hydraulic and lubrication portions of a system, and Off. No. 16/0018 representing option pricing for additional scope of work to generally include natural gas, pilot burners, compressed air, nitrogen, indirect cooling water, direct cooling water, and waste gas cooling water, at the Tenaris Bay City plant. These responses to the ONEX RFQs

3

were based on Tenaris drawings and engineering that ONEX provided to COEM at that time, which each drawing number specifically referenced.

7. On February 26, 2016, COEM submitted the 16/0015 base bid offer that specified the scope of work for hydraulic (10,522 Kg) and Lubrication (1,219 Kg), and was specifically referenced in the RFQ and Bill of Materials (BOM), for a total amount of $854,440.00. *See Ex. A*.

8. On March 10, 2016, COEM submitted the 16/0018 option pricing offer that specified the natural gas system (17,081 Kg) ($721,622.00), pilot burners (46 Pilots/Units)($16,675.00), compressed air (6,374 Kg)($412,446.00), nitrogen (3,870 Kg) ($208,638.00), indirect cooling water (4,941 Kg) ($140,610.00), direct cooling water (1,345 Kg)($50,088.00), and waste gas cooling water (11,121 Kg)($331,980.00), totaling 44,732 Kg plus 46 Pilot units ($1,882,059.00). *See Ex. B*.

9. On April 7, 2016, COEM and ONEX appeared to have agreed on the contract price of $2,650,000.00 for the scope of work specified in 16/0015 and 16/0018, which included an agreed discount of $86,499.00 for awarding both 16/0015 and 16/0018 bids, from the initial combined offers of $2,727,499.00.

10. In June 2016, COEM and ONEX executed a contract based on the scope of work provided in the RFQ, and upon which COEM based its pricing in 16/0015 and 16/0018. *See Ex. C*.

11. COEM commenced work in July 2016, according to what it believed to be a valid contract at the time.

12. Accordingly, by way of industry standards and custom in industrial plant construction projects, progress and payments under the contract are based on Kg installed. As such, ONEX provided COEM with a comprehensive Excel spreadsheet – Schedule of Value (SOV) – to track progress and thereby calculate the progress payment for invoicing purposes. In fact, as will be made in context below, the SOV had the same quantities as the BOM listed on the initial drawings and referenced in 16/0015 and 16/0018.

13. In August 2016, Tenaris issued new drawings with certain revisions, some of which affected the scope of work for which COEM agreed in their June 2016 agreement with ONEX.

14. In August 2016, ONEX requested that COEM review the new/revised drawings and provide analysis on the differences between the drawings as they pertain to the scope of work (SOW) of COEM under the agreement. COEM conducted the analysis and provided it to ONEX in a detailed table, by system, with drawing references, showing where there was an increase or not, or where there were additions.

15. Accordingly, on August 20, 2016, COEM issued an offer 16/0060 to account for the increase in quantity and scope based on the new/revised drawings, which accounted for an increase of $1,300,360.00, $326,300.00 being the additional Pilot Gas and Air work. *See Ex. D*.

16. Because the drawings on which COEM and ONEX initially agreed were no longer applicable, COEM was obligated to perform its work based on the new/revised

drawings, regardless of the drawings for which COEM agreed with ONEX, hence the discrepancy analysis and 16/0060 offer for the increased SOW.

17. With no response from ONEX, on September 20, 2016, COEM requested a modification of the contract to include the additional SOW set forth in 16/0060, since there was an inherent disconnect between obligations under the contract and obligations under the new/revised drawings.

18. COEM and ONEX subsequently met to discuss the serious disconnect between the contract and the obligations pursuant to the drawings, as well as ONEX's interpretation of COEM's SOW. At that meeting, despite the discrepancy analysis, ONEX refused to recognize some of the discrepancies and insisted COEM perform the additional SOW for the same price under the "contract." In fact, ONEX directed COEM to perform all the work under the new/revised drawings without any change orders.

19. On September 26, 2016, COEM submitted the SOV for payment, and noticed that ONEX changed the pilot burner line item to include the increase in the SOW based on the new drawings without increasing the price or issuing a change order.

20. COEM specifically brought to ONEX's attention the disconnect between ONEX's position and the documentation, specifically qualifying the SOV with the following language: "COEM Texas LLC executes this document with the <u>express condition</u> and notice that Pilot Burner quantity is not Kgs 2495 as indicated, but is 46 Pilot[s]."

21. The RFQ depicting COEM's scope of work for the Pilot Burners referenced a drawing (3410-P-DG-120-0107 SHEETS 1-2), clearly depict only 46 pilot units, upon which COEM submitted 16/0018.

22. Following the meeting, COEM provided ONEX an even more detailed explanation and analysis of the discrepancies in the SOW from the initial drawings to the new/revised drawings—even detailing the drawing numbers, revision, and quantity, with all supporting documentation.

23. COEM continued to work on the new and revised drawings without resolution with ONEX. ONEX approved the SOV based on the Excel spreadsheet, calculated by weight (Kg).

24. COEM submitted a change order for the increase based on the 16/0060, including the Natural Gas Pipeline and Pilot Gas and Air work.

25. ONEX continued to attempt to bootstrap the Pilot Air and Gas System into the Pilot Burner line item in 16/0018, and make COEM complete the additional work that was not included in the bid drawings as specifically referenced in 16/0018 (3410-P-DT-120-0118).

26. ONEX continued to deny any changes in the SOW for the Natural Gas Pipeline work.

27. On October 18, 2016, rather than respond to COEM's position with documentation to support its own position, ONEX unilaterally, and without prior notice or discussion, removed the installation of the Natural Gas Piping from the contract – a

7

value of $721,622.00. This removed scope of work equated to approximately thirty (30) percent of the total contract value.

28. On October 24, 2016, ONEX informed COEM that they believed there were no changes to the Natural Gas system; ONEX has never provided any documentation to confirm their belief. The unilateral revision to remove the Natural Gas Piping from the Purchase Order was done without justification and without basis.

29. On October 29, 2016, COEM put ONEX on notice of the improper unilateral cancellation of the Natural Gas Piping from the contract, since there were no means in the Contract to allow ONEX to do so without a change order, which required both parties agreement.

30. In that same notice, COEM notified ONEX of a withheld payment for the period of September 26, 2016.

31. ONEX responded to COEM, claiming the removal of the Natural Gas System was now—for the first time—based on safety issues, and that the withheld September 26, 2016 payment was based on the Pilot Burner-Pilot Air and Gas discrepancy.

32. On November 4, 2016, COEM responded to ONEX's position requesting clarity on ONEX's new position regarding safety issues as an excuse to unilaterally de-scale the SOW and Contract, in light of ONEX's Project Manger's representation in an email dated October 24, 2016, which stated nothing of safety:

> As we discussed in the meeting COEM is claiming several changes to the Natural system. We do not believe these are valid and rather than continue to disagree we are removing all the scope for the natural gas system from COEM's scope. The credit amount is what COEM has listed on their schedule of values for the Contract.

33. On November 10, 2016, ONEX sent COEM a status update of Change Order Requests (COR), which rejected COEM's request for the change in the contract to include the Pilot Air and Gas system for an additional $326,304.00, specifically stating:

> This Change Order request is rejected. The revised [i]ssued for Construction drawings had no changes in the scope only changes in the drawing numbers. All detailed information for these systems was provided to Coem in the bid documentation.

34. In the status update, ONEX requested COEM to further provide a breakdown to justify COEM's other CORs regarding hydraulic and lubrication, H0 to Tenova TOP, and water sealing outlet, even though COEM previously provided the supporting documentation, including the discrepancy analysis 16/0060.

35. ONEX also rejected COEM's COR for SCR Interconnecting, stating that there were no changes in scope only changes in drawing numbers, which was never resolved and remains in dispute.

36. COEM responded to ONEX's claims that the new SOW was included in bid documents, and notified ONEX that COEM would not perform the work based on the drawings on the bid documents which form the basis of the contract, and any additional work on any revised drawings would be ONEX's responsibility, unless a change order was approved.

37. On November 23, 2016, based on ONEX's position and conduct, COEM submitted a qualified and conditioned SOV #2:

> COEM Texas LLC executes this document with the <u>express condition</u> and understanding that the following matters are in dispute: (1) Pilot Burner quantity (46 units vs. 2496 kgs); (2) unilateral removal of the Natural Gas System; and (3) the OCIP value pending resolution of the Natural Gas System matter.

38. In the first days of December 2016, ONEX and COEM met to discuss their very strained relationship, including the Natural Gas Pipeline and Pilot Burner/Air and Gas disputes, as well as ONEX's alleged concerns over safety and personnel. Several items were addressed, and each party agreed to attempt to work through some set-backs; the Natural Gas Pipeline portion, however, remained removed from COEM's SOW.

39. On December 8, 2016, pursuant to the meeting, COEM provided ONEX an updated schedule.

40. On December 9, 2016, COEM provided comments and concerns to the updated schedule, to which COEM addressed the validity and other outstanding issues to ONEX, such as a delay by an outside supplier that was not in privity with COEM, or actual roof space that was not safe for workers to perform the work, or even the technical impossibility of not being able to flush an open line.

41. Nonetheless, on December 14, 2016, ONEX disregarded COEM's explanations, and in some instances, impossibilities beyond its control, and issued a notice to cure under the contract.

42. On December 23, 2016, COEM provided ONEX a notice of its position, and a proposal for resolution of the pending dispute, including a novation to exclude the

Natural Gas Pipeline SOW and generally include the SOW set forth in 16/0060. ONEX did not formally respond to this proposal.

43. ONEX did, however, issue a second notice to cure, which then provided that since COEM would not perform the additional SOW subject in 16/0060, ONEX would supply/supplement the necessary workforce, with the idea of charging back COEM for the additional cost.

44. That same day, December 23, 2016 — the day that ONEX submitted a second notice to cure premised on lack of adequate personnel, and nine (9) days after the first notice to cure — ONEX approved the change order for the installation of hydraulic piping – H0 to Tenova TOP in the amount of $41,200.00, without COEM having to provide ONEX with any additional documentation.

45. On January 5, 2017, COEM submitted another application for payment with an updated SOV based on kilograms – as was the pattern and practice.

46. January 25, 2017, ONEX approved another change order in the amount of $115,000.00, for additional hydraulic piping RHF, without COEM having to provide ONEX with any additional documentation.

47. ONEX added the SCR Interconnecting at half the price quoted in COEM's offer (16/0060), and added Mandrel FCE Lube line cleaning for $10,000.00. COEM accepted the change order for the additional hydraulic piping, but not for the SCR Interconnecting or Mandrel FCE Lube line cleaning.

48. Up to January 2017, progress calculations and invoicing were based on weight (kg) and/or by COEM entering a value (i.e., spools installed) into the ONEX SOV Excel spreadsheet.

49. Starting in February 2017, however, ONEX changed the progress calculation method to subjectively estimate the percentage by looking at the installed portions underlined on the P+I drawing. ONEX's subjective estimates decreased the percentage of work that COEM completed compared to the initial calculation method (i.e., weight and/or sections completed). ONEX provided no explanation for the change in calculations until May 2017, and as such, COEM's February invoice, which included the ONEX SOV spreadsheet and all documentation, for installations was delayed until April 2017.

50. From January to March 2017, COEM continued to work despite payment delays, schedule delays outside of COEM's charge, safety issues outside of COEM's charge, and daily disputes between ONEX and COEM regarding construction issues.

51. In March 2017, in order to diffuse tension between the parties, COEM and ONEX decided to enter a Memorandum of Understanding (MOU). Seven revisions of the MOU were completed, but the final version of the MOU was not executed due to ONEX's refusal to sign the agreed seventh revision.

52. In May 2017, ONEX presented COEM with SOV 6, which was calculated with the new modality whereby decreasing the percentage of actual work COEM had performed. COEM refused to sign and has never signed this document.

53. ONEX has not paid for work that COEM performed since January 2017, except for a few emergency projects that Tenaris required.

54. On May 12, 2017, TKO Offshore Contractors, LLC, a subcontractor under COEM, filed a lien against Tenaris Bay City for outstanding invoices for work performed on the ONEX contract; COEM's failure to pay TKO stems from ONEX's failure to remit payment to COEM.

55. On May 16, 2017, COEM sent notice to Tenaris Bay City and ONEX of its intent to file a Mechanic's and Materialman's Lien against Tenaris Bay City for outstanding February, March, and April invoices that ONEX failed to pay, which totaled to $632,304.02.

56. On May 18, 2017, ONEX terminated COEM's subcontract after receiving COEM's notice of intent to file a lien, stating that ONEX did not owe COEM payment and there was no past debt owed to COEM.

57. COEM ceased all operations once it received said termination.

58. On May 23, 2017, COEM filed a Mechanic's and Materialman's Lien against Tenaris Bay City for work performed based on the ONEX SOV Excel spreadsheet for $632,304.02 with the Matagorda County Clerk ("First Lien").

59. From May 2017 to July 2017, COEM attempted to negotiate with ONEX to resolve their disputes. All attempts at negotiations failed.

60. On June 23, 2017, TechCorr USA Management, LLC, a subcontractor under COEM filed a mechanic's and materialman's lien against Tenaris Bay City for work done

on the ONEX contract. COEM's failure to pay TechCorr stems from ONEX's failure to remit payment to COEM.

61. On July 3, 2017, ONEX filed a release of lien bond for the First Lien by way of posting bond. *See Ex. E.*

62. On July 20, 2017, COEM sent notice to both Tenaris Bay City and ONEX of its intent to file a second Mechanic's and Materialman's Lien against Tenaris Bay City in the amount of $199,276.00 for work performed in May 2017 ("Second Lien"). This lien was recorded with the Matagorda County Clerk on July 28, 2017.

63. On August 10, 2017, ONEX filed a release of lien bond for the Second Lien by way of posting bond. *See Ex. F.*

64. On August 15, 2017, Apache Industrial Painting, Inc., a subcontractor under COEM, filed a mechanic's and materialman's lien against Tenaris Bay City for work performed on the ONEX contract. COEM's failure to pay Apache stems from ONEX's failure to remit payment to COEM.

65. On August 24, 2017, TKO Offshore Contractors, LLC filed suit against COEM and Tenaris Bay City alleging breach of contract for failure to pay outstanding invoices for work it completed on COEM's ONEX contract. Such suit resulted from ONEX's failure to pay COEM for the work done.

66. On December 5, 2017, COEM and ONEX met for an agreed mediation, which was unsuccessful; no agreement was reached between the parties.

67. ONEX's conduct has harmed COEM more than financially for work it performed and was due. ONEX's conduct placed a cloud over COEM as not paying its subcontractors and having problems with other vendors.

68. COEM performs work around the world, and has suffered negative repercussions from ONEX's conduct, for which ONEX has improperly, unjustly, and intentionally placed in motion or allowed to be interpreted by other third parties, to the detriment of COEM.

69. To date, COEM has satisfied all of the outstanding liens of its subcontractors with its own funds, since ONEX has refused to pay COEM on work performed by these subcontractors under the ONEX-COEM scope of work.

**CAUSES OF ACTION**

COUNT 1: BREACH OF CONTRACT

70. COEM incorporates and re-alleges the preceding paragraphs.

71. COEM and ONEX entered into a valid, enforceable contract, or series of contracts, in June 2016. These agreements are valid contracts and are fully supported by valid consideration.

72. COEM at all material times performed under its contract with ONEX and sought to complete all work under its scope of work and terms; ONEX has not.

73. To date, COEM has not received payment from ONEX for the work completed by COEM in February, March, April, and May 2017. ONEX materially breached its contract with COEM by failing to timely pay COEM for their performance under the contract. ONEX's breach has caused COEM to suffer actual, economic

15

damages. In addition, COEM suffered damages relating to its expectation interest and reliance-interest in the contract, including subsequent alterations made by ONEX.

### COUNT 2: *QUANTUM MERUIT* AGAINST ONEX

74. COEM incorporates and re-alleges the preceding paragraphs.

75. In addition, and in the alternative, and if, for some reason, the Court concludes there is no enforceable contract between COEM and ONEX (i.e., by mutual mistake), then COEM pleads for recovery in *quantum meruit*.

76. COEM provided valuable goods and rendered valuable services to ONEX, which ONEX accepted, used, and enjoyed under such circumstances as reasonably notified ONEX that COEM expected ONEX to pay the reasonable value of such services and materials in exchange for COEM's provision of such goods and services. ONEX failed to pay for such goods and services. This failure by ONEX constitutes unjust enrichment and the benefits received and accepted by ONEX were to the general detriment of COEM. As such, ONEX caused COEM to suffer actual, economic damages for which COEM hereby sues ONEX to recover.

### PRODUCING AND PROXIMATE CAUSE

77. ONEX's conduct and actions stated herein were each a producing and/or proximate cause to the damages for which COEM brings this suit.

### CONDITIONS PRECEDENT

78. All conditions precedent to COEM's claims have occurred, been fulfilled, or been waived.

## JURY TRIAL DEMAND

79. COEM hereby requests a trial by jury.

## DAMAGES

80. ONEX's conduct and actions stated herein have caused COEM to suffer numerous damages, including, but not limited to:

   a. actual, economic damages of $1,949,459.00, which equates to the amount owed by ONEX under its original contract with COEM ($2,650,000.00) less the amount ONEX previously paid to COEM ($700,541.00);

   b. attorney fees and costs related to the liens filed by TKO Offshore Contractors, LLC, TechCorr USA Management, LLC, and Apache Industrial Painting, Inc.;

   c. attorney fees and costs related to the lawsuit initiated by TKO Offshore Contractors, LLC and the settlement of said suit; and

   d. irreparable harm and damage to its reputation in the industry.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, COEM sues ONEX for all compensatory damages, costs, and such other relief as this Court deems appropriate, and respectfully requests that this Court enter judgment in its favor and against ONEX for the specific relief requested to the fullest extent permitted by law, including, but not limited to, the following:

   (a) All actual damages as permitted by law in an amount to be proven at trial;

   (b) All equitable damages as permitted by law in an amount to be proven at trial;

(c) Interest at the applicable legal rate;

(d) Reasonable attorney fees as provided by the terms of Chapter 38 of the Tex. Civ. Prac. & Rem. Code;

(e) Pre-Judgement and post-judgment interest at the maximum lawful rate;

(f) Costs and expenses of suit as permitted by law; and

(g) Such other and further relief, at law or in equity, as the Court deems just and proper under the circumstances.

Respectfully submitted,

Sovany Law Firm

/s/ *Herrick L. Sovany*
Herrick L. Sovany
Federal Bar No. 33292
Two Greenway Plaza, Suite 650
Houston, Texas 77046
Tel.: 713-300-5156
Fax: 713-229-8545
herrick@sovanylaw.com

**ATTORNEY FOR PLAINTIFF**